UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD BARRY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:05CV00328(PCD) |
| NEW BRITAIN BOARD OF | : | |
| EDUCATION, | : | |
|     Defendant. | : | |

## MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT

Pending are Defendant's Motion for Summary Judgment [Doc. No. 50], filed on May 12, 2006, and Plaintiff's Motion for Partial Summary Judgment directed to counts Two and Four of the Complaint, filed on August 7, 2006 [Doc. No. 76]. For the foregoing reasons, Defendant's motion is **granted** and Plaintiff's motion is **denied.**

## I.   BACKGROUND

The facts recited are derived from the parties Local Rule 56(a)(2) statements with inferences favoring either side in considering their respective cross-motions. In 2004, when Plaintiff Barry was 70 years of age, he was terminated from his employment as Personnel Manager in the Human Resources Department ("HRD") of the Defendant New Britain Board of Education (the "Board"). He was originally hired in 1989 and continued in that position until 1996 when he was replaced and relegated to the position of Associate Personnel Manager. Barry filed an age discrimination law suit against the Defendant, which settled on June 25, 2001, pursuant to a Release and Settlement Agreement (the "Settlement Agreement") between the parties. As a result of the settlement of the first lawsuit, his replacement was named Director of Human Resources in the HRD and he became Personnel Manager again. Four days after finalizing the settlement agreement, by which Plaintiff released all claims against Defendant and

which included provisions pertinent to his employment, Plaintiff entered into a Contract of Employment with Defendant, which included provisions that it "shall supercede all prior agreements between the parties" (Pl.'s Opp. to Def.'s Mot. for Summ. J., Ex. C at ¶ 8) and that Plaintiff could be terminated for good and just cause. (Id. at ¶ 5(b).) After the settlement, a new Superintendent of Schools was appointed, Dr. Doris Klurtz. To facilitate her assessment of the school system and its functioning, she arranged an outside audit of all parts of the organization, including HRD, about which Dr. Klurtz had concerns. The audit questioned the efficiency and effectiveness of HRD, attributing several problematic aspects of HRD to its organizational structure and its two administrative positions, "Executive Director and Personnel Services [sic] Manager." (Def.'s Mot. for Summ. J., Ex. G at 23.) The structure was regarded as not "conducive to a healthy working environment, or one that can result in the effective management of the human resource operations." (Id. at 23; see also id. at 27.)

After the Superintendent and her assistants consulted with each segment supervisor on details of their perceived budget needs, the school administration prepared a budget for FY 2004-05 and submitted it to the Board for review. This first budget proposal included funding for Plaintiff's position. The Board recommended this proposal to the Board of Finance, which in turn recommended to the Mayor a reduction of the administration's submission by $5.48 million. After meeting with the Board of Finance and receiving an indication that further budget cuts might be made, the administration began to consider ways to reduce the budget. The administration's preliminary considerations included the elimination of several staff positions, one of which was Plaintiff's. (Def.'s Mot. for Summ. J, Ex. F at 52.) The Mayor's budget proposal submission to the Common Council, which was adopted after a public hearing, reduced

the administration's proposed budget by $3.4 million.  The administration met with a Property Owners Association, students' parents, and members of the staff to hear their respective views of what should be retained and what should be removed from the final budget, and then submitted those views to the Board.  As required, the Board adopted a budget for 2004-05 which was within the amount authorized by the Council and which, among other reductions, eliminated certain teachers, paraprofessionals, clerical, custodial, maintenance, nursing and security personnel, a total of 48 positions, one of which, as recommended by Dr. Klurtz, was Plaintiff's. (Id., Exs. H, I.)  The items reduced reflected the views of all those in the school system who had participated in developing the budget finally adopted by the Board, and the budget constraints were considered by Dr. Klurtz to be just cause for terminating those whose positions were eliminated.

On June 21, 2004, Dr. Klurtz provided written notice to Plaintiff that his position had been eliminated as a result of budget eliminations, and on July 31, 2004, she provided him with written notice that his dismissal was under consideration.  The audit and Dr. Klurtz had concluded that having two administrators, one of whom was Plaintiff, was inefficient, tended to create confusion, and did not create a management structure comparable to other school HRD staffing.  Plaintiff opted for a hearing by the Board to review his termination, which he attended with his attorney.  (Id., Ex. H.)  The elimination was affirmed at the hearing.  HRD was reorganized to reallocate responsibility as per the audit recommendations, and Plaintiff's position was not refilled.  On or about June 1, 2004, Scott McDonald, the Director of Human Resources, left and was temporarily replaced by Herbert Pandiscio, age 73.  Plaintiff was interviewed, along with other applicants, for the permanent position.  None of the applicants was deemed a good

match for the position, and Dr. Klurtz recommended to the Board that the position not be filled at that time. The position was later filled after an employment posting, though none of the original applicants was reinterviewed.

Plaintiff filed the Complaint in this action on February 24, 2005, alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and breach of his employment contract and settlement agreement. On May 12, 2006, Defendant filed a motion for summary judgment, and on August 7, 2006, Plaintiff filed a partial motion for summary judgment.

## II. STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 225. However, when moving for summary judgment against a party who

will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing that there is no genuine of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.") The non-moving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In determining whether the non-moving party has met its burden, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

**III.    DISCUSSION**

Defendant moves for summary judgment on all four of Plaintiff's claims: age discrimination, retaliation for his original discrimination claim, breach of his employment

contract, and breach of the Settlement Agreement. Plaintiff moves for partial summary judgment for his claims of retaliation and breach of the 2001 settlement. Each claim will be discussed subject to the moving party's burden of showing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### A. Age discrimination

Defendant moves for summary judgment on Plaintiff's age discrimination claim on the ground that there is no credible evidence that Plaintiff's age was a factor in his termination or his failure to be appointed to the Director of Human Resources position. Defendant also argues that to the extent Plaintiff is trying to re-litigate his 1998 age discrimination lawsuit, he is precluded from doing so by the terms of the Settlement Agreement and by the doctrine of accord and satisfaction.

Under the ADEA, 29 U.S.C. §§ 621 et seq., it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1) (1988). It is not unlawful, however, for an employer to discharge an employee based on reasonable factors other than age. 29 U.S.C. § 623(f)(1). When reviewing claims brought pursuant to the ADEA, courts apply the three-step burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for racial discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. See, e.g., Woodman v. WWOR-TV, Inc., 41 F.3d 69, 76 (2d Cir. 2006); Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). Accordingly, a plaintiff has the initial burden of establishing a prima facie case of age discrimination by showing that, "(i) at the relevant time the plaintiff was a member of the

protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" Woodman, 411 F.3d at 76 (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996)).  A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination, Woodman, 411 F.3d at 76, and the burden of production shifts to the defendant.  If the defendant then proffers a "legitimate, nondiscriminatory reason" for the challenged employment action, Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001), "the presumption of discrimination drops out," Roge, 257 F.3d at 168, and the plaintiff must prove that the legitimate reasons by the defendant were "not its true reasons but were a pretext for discrimination."  Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).  At all times, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated against the plaintiff.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)).

  Defendant contends that Plaintiff has failed to establish the final prong of the prima facie case, that similar situated and "substantially younger" employees were treated more favorably by Defendant than he was.  Norville v. State Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). See also Woodman, 411 F.3d at 76.  Plaintiff must compare his experience to that of other Board employees who were "similarly situated in all material respects."  Norville, 196 F.3d at 95 (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)).  See also Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp. 2d 125, 131 (D. Conn. 1998).  This he has failed

to do.  Plaintiff makes conclusory statements that he was the only person actually terminated (Pl.'s Opp. to Mot. for Summ. J. at 10), but such sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact.  <u>Shumway</u>, 118 F.3d at 65.  He offers no facts to refute Defendant's statements, supported by the record, that Plaintiff's position was one of 48 to be eliminated.  (<u>See, e.g.</u>, Def.'s Mot. for Summ. J., Ex. I.)  Plaintiff correctly argues that he is not required to show that a younger person was hired in his place.  He is, however, required to show that younger employees were somehow treated more favorably than he was, whether because they were hired in new positions, disproportionately spared termination during the Defendant's reduction in force, or received some other favorable treatment that tends to show that Plaintiff's termination was motivated by aged discrimination.  Plaintiff has failed to show that younger employees have been treated more favorably than him and accordingly has failed to meet his burden of establishing a prima facie case.

      Even if Plaintiff had established a prima facie case of age discrimination, Defendant has offered substantial evidence showing a bona fide nondiscriminatory motive for eliminating Plaintiff's position.  As the facts presented illustrate, school administrators, staff, the Board of Finance, the Mayor, the Town Council, and the Board of Education were all involved in the protracted process by which the budget for the 2004-05 school year was developed.  Before commencing the budget development process, Dr. Klurtz hired an outside consultant to evaluate the entire school system, including all staff members.  The first budget proposal, presented by the school administration, did not eliminate Plaintiff's position.  After receiving indication that the Board of Finance would reduce the budget projected in the first proposal, the administration initiated a process of reducing the allocation of funds commensurate with the amount of funds it

was likely to receive.  The administration further refined its funds allocations when the final appropriation was determined by the Town Council.  Throughout the budget development process, staff reduction was one of the options available to and employed by the administration in order to accommodate the limited means available to the school system, and its final submission to the Board of Education eliminated 48 staff positions.  Those involved in the budget process concluded that Plaintiff's position was duplicative of that of Human Resources Director and contributive to inefficiency, and the final budget proposal reflected a determination that Plaintiff's position was one of those to be eliminated in order to conserve funds and comply with the HRD audit.   After specifically reviewing the elimination of Plaintiff's position, the Board of Education concurred by approving the final budget.  These facts show that the Board's decision to eliminate Plaintiff's position was based on a demonstrated need to reduce spending, an effort to do so by eliminating many positions, and a determination of which positions were least efficient and least contributive to the education of children and therefore most appropriately eliminated.  Nothing in this budget review process directly shows or gives rise to the inference that the Board considered Plaintiff's age when approving the reduction of force, including the elimination of Plaintiff's position, in deciding the final budget.  Defendant has also proffered evidence that Plaintiff was not hired for the Director of Human Resources position because of his lack of qualifications for the job, not because of his age.  According to testimony by Dr. Kurtz, the hiring committee did not designate Plaintiff a leading candidate because he was not considered to have the interpersonal skills required for the position.  (Def.'s Mot. for Summ. J., Ex. F, Dep. of Doris J. Kurtz, at 62-65.)

Because the Board has articulated legitimate, nondiscriminatory reasons for the

elimination of Plaintiff's position and for its refusal to rehire Plaintiff, the burden shifts back to Plaintiff to prove by a preponderance of evidence that Defendant's proffered reasons are a pretext for discrimination. Saint Mary's Honor Ctr. v. Hicks, 509 U.S. at 507; Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. at 253. Plaintiff has offered no evidence to contradict Defendant's legitimate, nondiscriminatory reasons. At his deposition, Plaintiff stated that no one, including Board members and Dr. Kurtz, had said anything to lead him to believe that his failure to be hired for the Director of Human Resources position was due to his age. (Def.'s Mot. for Summ. J., Ex. D, Dep. of Richard Barry, 23:13-25.) Plaintiff suggests that the budgetary concerns cited as a reason for the elimination of his position are pretext for age discrimination, but he points to nothing in the way of evidence which might support that conclusion or which would show a disparate impact on older employees in violation of the ADEA. Cf. Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 111-13 (holding unlawful a reduction in workforce that disproportionately affected older employees). Conclusions, conjecture, and speculation are not enough to provide a basis for finding a genuine issue of material fact for trial. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). He has thus not met his "burden of proving that his age was the real reason for the discharge." Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994). In the absence of material fact in issue, Defendant is entitled to summary judgment as matter of law on this claim.

**B.     Retaliation**

Defendant moves for summary judgment on Plaintiff's second count on the ground that there is no evidence that the elimination of the Plaintiff's position and the Board's decision not to rehire him were retaliatory or that the Board's stated reasons for eliminating his position and not

rehiring him were pretextual. Defendant also maintains there is no evidence that the Board played any substantive role in either decision. In his motion for partial summary judgment, Plaintiff argues that he should be granted summary judgment on his retaliation claims because Defendant has admitted all of the elements of retaliation. (Pl.'s Mem. in Support of Mot. for Partial Summ. J. at 4-6.)

Retaliation claims are reviewed under the same burden-shifting framework as adverse-employment action discrimination claims. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d at 94-95. In order to establish a prima facie case of retaliation, Plaintiff must show by a preponderance of evidence: "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Holt .v. KMI-Continental Inc., 95 F.3d 123, 130 (2d Cir. 1996) (internal quotation marks omitted). The complaint "must set forth a 'particularized allegation relating to a causal connection between the flawed outcome and bias' and must point to 'particular circumstances' supporting an inference of bias, such as 'statements by members of the disciplinary tribunal, statements by pertinent... officials, or patterns of decision-making that also tend to show the influence of [age].'" Murray v. N. Y. Univ. Coll. of Dentistry, 57 F.3d 243, 251 (2d Cir. 1995) (quoting Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)).

Plaintiff has failed to allege any facts which establish a causal connection between his termination and alleged bias on the part of the Defendant. Plaintiff's L.R. 56(a)(2) statement suggests that his high salary and the highly unusual structure of the HRD, as characterized by the auditor, resulted from his first lawsuit. According to Plaintiff's logic, his position was

terminated because of his high salary; his high salary resulted from the settlement of his first lawsuit; therefore, his position was terminated because of his first lawsuit.  However, there is no basis to conclude that the operational decision to terminate his position three years after the settlement of his first lawsuit was caused by his earlier claim or its resolution.  Plaintiff attempts to link two events, years apart, while ignoring the undisputed facts that a budget squeeze on the education system could only be resolved by cutting costs through a reduction in force and that as a result Defendant decided to eliminate 48 positions in addition to Plaintiff's.  Rather than attacking the legitimate defense of budget constraints, substantiated by the audit report which determined the inefficiency of the two top positions at the HRD, Plaintiff conclusorily states that Defendant has admitted all the elements of retaliation.  This statement is not supported by the record, and Plaintiff has unpersuasively argued that a nexus exists between the first lawsuit and his termination.  Plaintiff's claim of direct causation, which is based on an attenuated chain of events and disregards the intervening budget crunch, is unavailing.  To conclude otherwise would invite an argument that any act by Defendant which altered or affected Plaintiff's job at any point during his contract tenure would be precluded as retaliatory.  This cannot be the case.  Plaintiff had no guarantee of infinite employment as Personnel Manager; his June 29, 2001 contract specifically reserved to the Board the right to terminate him for "good and just cause."  (Def.'s Mot. for Summ. J., Ex. E.)  With no evidence to permit a finding that the reason for eliminating Plaintiff's position was pretextual, there is no basis for finding that a genuine issue of material fact is shown as to Plaintiff's claim for retaliation.  Therefore, Defendant is entitled to summary judgment on Count Two, and Plaintiff's motion is denied.

  **C.**  **Breach of Employment Contract and Breach of Settlement Agreement**

Defendant contends there is no basis for Plaintiff's assertion that the elimination of his position due to budgetary concerns constituted a breach of his June 29, 2001 employment contract or the June 25, 2001 Settlement Agreement. According to Defendant, it had fully performed under the Settlement Agreement, and the terms of that agreement had been superseded by the Plaintiff's subsequent June 29, 2001 employment contract. Because the Board is entitled to an entry of summary judgment on Plaintiff's federal claims, no independent basis remains for pendent jurisdiction over Plaintiff's two state law breach of contract claims. See 28 U.S.C. § 1367(c)(3). Even if the Court did not enter summary judgment in favor of Defendant on the federal claims, Defendant would still be entitled to summary judgment on the third and fourth counts of Plaintiff's complaint for the foregoing reasons.

Plaintiff maintains that Defendant's termination of him a year before the end of his contract constitutes a breach of contract. The employment contract from June of 2001 contains a provision which allows termination for "good and just cause." (Contract CITE, p. 2, ¶ 5(b)). The record reflects that the Board terminated Plaintiff and eliminated his position as part of its broader reduction in force effected to conserve the limited funds appropriated by the council, as discussed above. "It is well-established that a legitimate reduction of force during a budgetary shortfall or economic downturn supported by unrefuted, substantial record evidence constitutes just cause for termination as a matter of law." Valle v. Johnson Controls World Servs., Inc., 957 F. Supp. 1404, 1414 (S.D. Miss. 1996). This is true even in cases where the plaintiff alleges that the reduction in force was a mere pretext for discrimination. See, e.g. Grooms v. Mobay Chemical Corp., 861 F. Supp. 497, 504-05, aff'd, 993 F.2d 1537 (4th Cir.), cert. denied, 510 U.S. 996 (1993). As discussed above, it has been established in the record, absent the evidence of any

motive to the contrary, that the Board had a legitimate reason for eliminating Plaintiff's position as part of a reduction in force necessary to cut the requisite $3 million from the budget proposal. Defendant has provided unrefuted evidence that the elimination of Plaintiff's position and the decision not to rehire Plaintiff were based on a fair appraisal of the inefficiencies of his position and a reasonable evaluation of his interview performance. This constitutes good and just cause for termination of Plaintiff's employment contract. Defendant is accordingly entitled to summary judgment on Plaintiff's breach of contract claim.

Each party moves for summary judgment on Count Four of the Complaint, which alleges that Defendant breached the Settlement Agreement. In bringing this claim, Plaintiff ignores the effect of the employment contract, the language of which explicitly supercedes "all prior agreements between the parties," including the Settlement Agreement. (Pl.'s Opp. to Def.'s Mot. for Summ. J., Ex C at ¶ 5(b).) Plaintiff contends that the June 29th employment contract was executed as part of the Settlement Agreement and so the Settlement Agreement, effectively attached to the employment contract, has not been superseded. Plaintiff has proffered no evidence, however, which controverts the plain language of the employment contract, which states no connection to the Settlement Agreement and clearly supersedes all prior agreements. The subsequent employment contract therefore prevails over the Settlement Agreement and is dispositive of any claim of breach of the Settlement Agreement. Even if the Settlement Agreement were deemed to be still in effect, Defendant would be entitled to summary judgment on Count Four. Plaintiff's breach of the Settlement Agreement claim is a variation of his retaliation claim, based on an alleged violation of the provision in the Settlement Agreement that Defendant would not retaliate against Plaintiff for his first lawsuit. This provision, if still in

effect, would only have legal efficacy if the termination of Plaintiff's position was in fact proven to be retaliatory, the burden of which falls to Plaintiff. As discussed above, there is no basis in the record for a finding that the Board's motive in its decision to eliminate Plaintiff's position was motivated by anything other than a reasonable cost-saving allocation of funds. Plaintiff has provided no evidence that this budgetarily responsible, non-discriminatory decision was actually a pretext for discrimination. Accordingly, there being no genuine issue of fact to support Plaintiff's claim in Count Four, Defendant's motion is granted as to Count Four, and Plaintiff's motion is denied.

### IV.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. No. 50] is **granted** and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 76] is **denied.**

SO ORDERED.

Dated at New Haven, Connecticut this  22nd  day of December, 2006.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE
